OPINION OF THE COURT
Frank Composto, J.
Defendants Belt Parkway Nursing Home (nursing home) and Estate of Ben Zion Frankel and Clara Frankel (Frankel) move to dismiss plaintiff’s complaint upon the ground that the State of New York (State) is not the proper party plaintiff. Defendants Devorah Leifer and Ziporah Rabinovitch (Leifer and Rabinovitch) separately move to dismiss the complaint pursuant to CPLR 3211 upon the ground that the complaint does not contain sufficient allegations to state a cause of *265 action or, in the alternative, that plaintiff be required to serve an amended complaint.
The court will first consider the attack by defendants nursing home and Frankel that the State is not the proper party plaintiff.
It is conceded that defendants nursing home and Frankel were certified and recognized as a provider of services as defined under title 19 of the Social Security Act (US Code, tit 42, § 1396 et seq.) known as the Medicare Act and under the respective statutes of the State and City of New York. Said defendants were entitled to reimbursement for services that were properly provided by them within the Medicare program. The reimbursement for services claimed to have been furnished was in each instance payable by the City of New York (city) and received by these defendants from the city. Said defendants therefore urge that this action to recoup alleged overpayments is not assertable by the State as the State made no such overpayments to them, and if there be a cause of action against them, the City of New York, and it alone, is the proper party to seek recovery of such alleged overpayments.
Although not fully supportive of defendants’ position, yet cited by defendants, Mr. Justice Hyman in State of New York v Frankel (94 Misc 2d 105) held on the same issues that the city is a necessary party plaintiff and that the State is limited to a recovery of only the actual contributions made by it to the city. This court does not concur with the said decision.
The issues and applicability of the authorities urged upon the court by defendants may be best viewed and determined upon a review and analysis of all of the relevant statutes.
Under the Medicare Act, grants are made to States for medical assistance programs. To qualify for such grants, the State must adopt a plan for medical assistance with the approval of the Secretary of Health, Education and Welfare (US Code, tit 42, §§ 1396, 1396a). The plan, among others, requires institutions providing services under the plan to keep records of the services provided and "to furnish the State agency with such information, regarding any payments claimed by such * * * institution * * * as the State agency may from time to time request” (US Code, tit 42, § 1396a, subd [a], par [27]).
The office of the State Attorney-General for the State of New York is the "single identifiable entity of the State government which the Secretary certifies” as the " 'State medi *266 caid fraud control unit’ For the State of New York, the Attorney-General is defined as the "entity” whose functions, among others, are to conduct "a statewide program for the investigation and prosecution of violations of all applicable State laws regarding any and all aspects of fraud in connection with any aspect of the provision of medical assistance and the activities of providers of such assistance under the State plan” (US Code, tit 42, § 1396b, subd [q]). In addition, "The entity provides for the collection, or referral of collection to a single State agency, of overpayments that are made under the State plan to health care facilities and that are discovered by the entity in carrying out its activities.” (US Code, tit 42, § 1396b, subd [q], par [5].)
In consonance with the Medicare Act, the Social Services Law provides for distribution by the Department of Welfare (department) of funds appropriated by the Legislature "and also such funds as may be received from the federal government for such purpose”. In furtherance thereof the department was authorized: to "supervise all social services work, as the same may be administered by any local unit of government”, "to establish rules, regulations and policies to carry out its [purposes]”, "to review * * * for the purpose of determining whether assistance and care have been * * * properly provided * * * to make and issue such decision with relation thereto as in its judgment is justified, and such decision shall be binding on all local officials or others concerned in the matter”. The department was further authorized to "design and implement a welfare management system” so as to assist local districts and the State in achieving the goals of "reducing mismanagement in the administration of such program, detecting fraudulent practices, and helping identify policies or conditions that will reduce or deter fraud * * * [and of] achieving compliance with federal laws and regulations and maximizing utilization of federal funds”. (Social Services Law, § 20, subd 2, pars [c], [b]; subd 3, pars [d], [f]; § 21, subd 1, pars a, c.) The State Commissioner of Social Services was appointed as chief administrative officer, empowered, among others, to "exercise general supervision over the work of all local welfare authorities” (Social Services Law, § 34, subd 3, par [d]). The City of New York was then declared to be and "have all powers and duties of a public welfare district insofar as consistent with the provisions of the special and local laws relating to such cities” (Social Services Law, § 56).
*267 After setting forth the organizational background and powers for the proper and efficient functioning of the State plan with full supervision and control over the activities of the welfare districts inclusive of the City of New York, the Social Services Law then declares it to be "unlawful for any person, firm or corporation knowingly by means of a false statement or representation * * * or other fraudulent scheme or device * * * to attempt to obtain or to obtain payment from public funds for services or supplies furnished or purportedly furnished”. For "any violation * * * the local services district or the state shall have a right of action to recover civil damages equal to three times the amount by which any figure is falsely overstated. Amounts collected pursuant to a judgment under this section shall be apportioned between the local social services district and the state in accordance with the regulations of the department. The remedy provided by this subdivision shall be in addition to any other remedy provided by law.” (Social Services Law, § 145-b, subds 1, 2; emphasis added.)
To enforce the provisions of the Social Services Law, the Executive Law delineates the powers of the Attorney-General and declares that "He may with the approval of the governor retain counsel to recover moneys or property belonging to the state” (Executive Law, § 63, subd 7), and then mandates that the State shall have the right to recover funds from any "domestic, municipal, or other public corporation” (Executive Law, § 63-c, subd 1). The State’s right of action "may be maintained * * * in any court of the state * * * although a right of action for the same cause exists by law in some other public authority, and whether an action therefor in favor of the latter is or is not pending when the action in favor of the state is commenced. The attorney-general shall commence an action * * * whenever he deems it for the interests of the state so to do; or whenever he is so directed, in writing, by the governor.” (Executive Law, § 63-c, subd 1.) A most significant section (Executive Law, § 63-c, subds 3, 4) provides that the final judgment that may be obtained by the State in the action brought by it "may direct * * * that any money, funds * * * recovered * * * or awarded * * * be disposed of, as justice requires * * * or to apply the same or the proceeds thereof to the objects and purposes for which they were authorized to be raised or procured”. In such case, any city, county, town, village or other division, "which was not a party to an action *268 * * * and which claims to be entitled to the custody or disposition of any of the money * * * recovered * * * by the final judgment in the action * * * may bring a special proceeding against the attorney-general at any time after the actual collection of the money * * * in the supreme court, county of Albany, seeking disposition of the money” (emphasis added).
This court concludes from the review and analysis of the foregoing statutes that the clear intendment and rationale thereof is to retain in the State, as sovereign, the power over all of its local county districts and cities so as to enable the State to supervise and efficiently conduct the welfare program. More important, the Attorney-General is empowered and duty bound to observe not only the mandate of the Medicare Act (US Code, tit 42, § 1396b, subd [q], par [5]) to collect "overpayments that are made under the State plan to health care facilities” but also the statutory command of subdivisions 1 and 2 of section 145-b of the New York State Social Services Law, and sections 63 and 63-c of the Executive Law, for the institution of actions for full recoupment and where fraud is involved to also seek treble damages. On a recovery the Attorney-General is to apportion the funds collected "between the local social services district and the state”. The State may not be limited in any apportionment solely to the amounts contributed by it to the city as that would be in direct conflict with subdivisions 3 and 4 of section 63-c of the Executive Law that provides for apportionment of the money recovered "as justice requires”. If the City of New York should be aggrieved by any apportionment made by the State, and particularly to the nonpayment to it of any of the treble damages recovered by the State, then the city is not left without a remedy but is specifically accorded the statutory right to institute a "special proceeding against the attorney-general”.
No authority other than the prior Queens County decision has been cited or called to this court’s attention that declares the State of New York not to be a proper party plaintiff in seeking recoupment of alleged overpayments made to said defendants. It must be recognized that the State as a sovereign has an inherent common-law right to collect funds erroneously paid out or wrongfully obtained (see Matter of Soto [Catherwood], 35 AD2d 395; Matter of Fahey v Whalen, 54 AD2d 1097; and the lower court opn in 84 Misc 2d 1040, 1043; Hurlbut v Whalen, 54 AD2d 311; United States v Shanks, 384 F2d 721; Di Silvestro v United States, 405 F2d 150, cert den *269 396 US 964; Wilson Clinic & Hosp. v Blue Cross of S. C., 494 F2d 50; Mt. Sinai Hosp. of Greater Miami v Weinberger, 517 F2d 329). Moreover, the city is an agency of the State, limited in its government by the powers granted to it which are ever subject to modification and revocation by the State (see Matter of McAneny v Board of Estimate & Apportionment of City of N. Y., 232 NY 377; Matter of County of Cayuga v McHugh, 4 NY2d 609; City of Tulsa v Oklahoma Natural Gas Co., 4 F2d 399, app dsmd 269 US 527).
Accordingly, the motion of defendants nursing home and Frankel is denied.
The motion of defendants Leifer and Rabinovitch to dismiss the complaint for lack of sufficient allegations to state a cause of action is denied. Paragraph 34 of the complaint alleges that each of the defendants "in assisting and contributing to the preparing of the HE -2 P reports * * * knew they were false and fraudulent in the specific areas aforementioned * * * [and] were made by defendants with the intention of deceiving and defrauding the State of New York, the Health Department and other relevant State agencies, and were made by defendants in order to induce New York and its agencies to make certain payments of monies to defendants”. In the other paragraphs of the complaint, plaintiff specifically enumerates the items and reports on which plaintiff claims defendants improperly obtained the funds sought to be recouped.
The only inquiry in determining the sufficiency of a complaint "is whether there can be fairly gathered from all the averments the requisite allegations of a valid cause of action, cognizable by the courts of this State” (Cohn v Lionel Corp., 21 NY2d 559, 562). The court finds that the complaint does contain sufficient allegations of a valid cause of action. With respect to defendants’ claim of "indefiniteness of the complaint, the defendants should properly be relegated to their remedies of a demand for a bill of particulars and disclosure proceedings” (Daukas v Shearson, Hammill & Co., 26 AD2d 526). Moreover, "where the circumstances constituting an alleged fraud are peculiarly within the knowledge of the party against whom the fraud is claimed, the requirement of particularizing such fraud is relaxed” (Rogers v Sound of Music Co., 67 Misc 2d 412, 415; see, also, Jered Contr. Corp. v New York City Tr. Auth., 22 NY2d 187).
The motions of the moving defendants are denied.