339 F.Supp.2d 165 (2004)
In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION
County of Suffolk
v.
Abbott Laboratories, et al.
No. MDL 1456. No. CIV.A.01-12257-PBS.
United States District Court, D. Massachusetts.
September 30, 2004.
*166 *167 *168 Jeffrey B. Aaronson, Bell, Boyd & Lloyd, Chicago, IL, for Baxter International, Inc., Defendant.
Daniel F. Attridge, Kirkland & Ellis, Washington, DC, for B. Braun Medical Inc., B. Braun of America, Defendants.
Gary L. Azorsky, Berger & Montague, PC, Philadelphia, PA, for Ven-A-Care of the Florida Keys, Inc., Plaintiff.
Anita B. Bapooji, Testa, Hurwitz & Thibeault, LLP, Boston, MA, Steven F. Barley, Hogan & Hartson, LLP, Baltimore, MD, for Amgen Inc., Defendant.
Douglas S. Brooks, Kelly, Libby & Hoopes, PC, Boston, MA, for Amgen Inc., Defendant.
Rebecca Bedwell-Coll, Mascone, Emblidge & Quadra, San Francisco, CA, for Constance Thompson, John B. Rice, Plaintiffs.
Mark A. Berman, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C., Newark, NJ, for Berlax Laboratories, Inc., Reliant Pharmaceuticals, LLC, Defendants.
Steve W. Berman, Hagens & Berman, Seattle, WA, for Shirley Geller, State of Nevada, State of Montana, All Plaintiffs, Plaintiffs.
David J. Bershad, Milberg Weiss Bershad Hynes & Lerach LLP, New York, NY, for Citizens for Consumer Justice, Colorado Progressive Coalition, Congress of California Seniors, Florida Alliance for Retired Americans, Health Care For All, Massachusetts Senior Action Council, Masspirg, Minnesota Senior Federation, New Jersey Citizen Action, New York State Wide Senior Action Council, Pennsylvania Alliance For Retired Americans, Vermont Public Interest Research Group, West Virginia Citizen Action, Wisconsin Citizen Action, Citizen Action of New York, Connecticut Citizen Action Group, Gray Panthers of Sacramento, Health Action of New Mexico, Maine Consumers for Affordable Health Care, North Carolina Fair Share, Oregon Health Action Campaign, Oregon State Public Interest Research Group, United Senior Action of Indiana, Inc., Betty Sicher, Jack Douglas, Joan S. Lee, John Bennett, Pearl Munic, Sue Miles, Plaintiffs.
Aimee E. Bierman, Kirkpatrick & Lockhart, LLP, Boston, MA, for Aventis Behring LLC, Aventis Pharma, Hoechst Marion Roussel, Inc., Aventis Pharmacy, Hoescht Marion Roussel, Inc., Defendants.
Jack B. Blumenfeld, Morris, Nichols, Arsht, & Tunnell, Wilmington, DE, for Astrazeneca PLC, Consolidated Defendant.
Thomas L. Boeder, Perkins Coie, Seattle, WA, for Immunex Corp., Defendant.
Anthony Bolognese, Bolognese & Associates, Philadelphia, PA, for United Food & Commercial Workers Unions and Employers Midwest Health Benefits Fund, Consolidated Plaintiffs.
James J. Breen, Breen Law firm, Alpharetta, GA, for Ven-A-Care of the Florida Keys, Inc., Plaintiff.
Jill Lori Brenner, Donnelly, Conroy & Gelhaar, LLP, Boston, MA, for Baxter Healthcare Corp., Baxter International, Inc., Defendants.
Nicole Y. Brumsted, Lieff Cabraser Heimann & Bernstein, LLP, Boston, MA, for Citizens for Consumer Justice, Colorado Progressive Coalition, Congress of California Seniors, Florida Alliance for Retired Americans, Health Care For All, Massachusetts Senior Action Council, Masspirg, Minnesota Senior Federation, New Jersey Citizen Action, New York State Wide Senior Action Council, Pennsylvania Alliance For Retired Americans, Vermont Public Interest Research Group, West Virginia *169 Citizen Action, Wisconsin Citizen Action, Plaintiffs.
Michael M. Buchman, Milbert, Weiss, Bershad, Hynes & Lerach, LLP, New York, NY, for Colorado Progressive Coalition, Congress of California Seniors, Florida Alliance for Retired Americans, Health Care For All, Massachusetts Senior Action Council, Masspirg, Minnesota Senior Federation, New Jersey Citizen Action, New York State Wide Senior Action Council, Pennsylvania Alliance For Retired Americans, Vermont Public Interest Research Group, West Virginia Citizen Action, Wisconsin Citizen Action, Citizens for Consumer Justice, Citizen Action of New York, Connecticut Citizen Action Group, Gray Panthers of Sacramento, Health Action of New Mexico, Maine Consumers for Affordable Health Care, North Carolina Fair Share, Oregon Health Action Campaign, Oregon State Public Interest Research Group, United Senior Action of Indiana, Inc., Betty Sicher, Jack Douglas, Joan S. Lee, John Bennett, Pearl Munic, Sue Miles, Plaintiffs.
James C. Burling, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, for American Home Products Corp., Biogen, Inc., Defendants.
David J. Burman, Perkins Coie, Seattle, WA, for Immunex Corp., Defendant.
Evan Dean Buxner, Chicago, IL, for All Plaintiffs, Plaintiff.
James P. Carroll, Jr., Kirby McInerney & Squire, New York, NY, for Suffolk County (N.Y.), Plaintiff.
Tod S. Cashin, Buchanan Ingersoll, PC, Princeton, NJ, for Aventis Behring LLC, Consolidated Defendant.
Ronald L. Castle, Arent, Fox, Kintner, Plotkin, Plotkin & Kahn, LLC, Washington, DC, for Chiron, Defendant.
William F. Cavanaugh, Jr., Patterson, Belknap, Webb & Tyler LLP, New York, NY, for Centocor, Inc., Johnson & Johnson, Ortho Biotech Products, L.P., Johnson & Johnson Health Care Systems, Inc., Ortho McNeil Pharmaceuticals, Inc., OrthoNeutrogena, Defendants.
David J. Cerveny, Proskaver Rose LLP, Boston, MA, for Novartis Pharmaceuticals, Defendant.
Eric P. Christofferson, Ropes & Gray, LLP, Boston, MA, for Schering-Plough, Corp, Warrick Pharmaceuticals Corporation, Consolidated Defendants.
Joanne M. Cicala, Kirby McInerncy & Squire, New York, NY, for Suffolk County (N.Y.), County of Westchester, County of Rockland, Consolidated Plaintiffs.
Daniel J. Cloherty, Dwyer & Collora LLP, Boston, MA, for Bristol-Myers Squibb Company, Oncology Therapeutics Network Corp., Defendants.
Jonathan D Cohen, Greenberg Traurig, LLP, Boston, MA, for Mylan Laboratories, Inc., Defendant.
Jeremy P. Cole, Jones Day, Chicago, IL, for Abbott Laboratories, Defendant.
Christopher R. Cook, Jones Day, Washington, DC, for Abbott Laboratories, Defendant.
Robert C. Cook, Jones Day, Washington, DC, for Abbott Laboratories, Defendant.
Michael R. Costa, Greenberg Traurig, LLP, Boston, Ma, for Mylan Laboratories, Inc., Defendant.
Paul J. Coval, Vorys, Sater, Seymour and Pease, LLP, Columbus, OH, for Bedford Laboratories, Ben Venue Laboratories Inc., Boehringer Ingelheim Corp., Consolidated Defendants.
William M. Cowan, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC, Boston, MA, for Eli Lilly and Company, Defendant.
*170 Florence A Crisp, Davis Polk & Wardwell, New York, NY, for Astrazeneca PLC, Consolidated Defendant.
Jonathan W. Cuneo, Cuneo Law Group, Washington, DC, for Shirley Geller, Consolidated Plaintiff.
Christopher J. Cunio, Cooley, Manion, & Jones, LLP, Boston, MA, for ICN Pharmaceuticals, Inc., Defendant.
Joseph Danis, The David Danis Law Firm, P.C., St. Louis, MO, for Citizen Action of New York, Connecticut Citizen Action Group, Gray Panthers of Sacramento, Health Action of New Mexico, Maine Consumers for Affordable Health Care, North Carolina Fair Share, Oregon Health Action Campaign, Oregon State Public Interest Research Group, United Senior Action of Indiana, Inc., Betty Sicher, Jack Douglas, Joan S. Lee, John Bennett, Pearl Munic, Sue Miles, All Plaintiffs, Plaintiffs.
William A. Davis, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC, Washington, DC, for Eli Lilly and Company, Defendant.
Michael DeMarco, Kirkpatrick & Lockhart, LLP, Boston, MA, for Aventis Pharmacy, Aventis Behring LLC, Consolidated Defendants.
Merle M. Delancey, Jr., Dickstein Shapiro Morin & Oshinsky LLP, Washington, DC, for Baxter International, Inc., Baxter Healthcare Corp., Baxter Pharmaceutical Products, Inc., Consolidated Defendants.
Jeanne E. Demers, Kirkpatrick & Lockhart, LLP, Boston, MA, for Aventis Pharmacy, Defendant.
John C. Dodds, Morgan Lewis & Boskius, LLP, Philadelphia, PA, for Pharmacia & Upjohn, Inc., Pharmacia Corp., Pfizer, Inc., Consolidated Defendants.
Lloyd Donders, Kirby McInerney & Squire, New York, NY, for Suffolk County (N.Y.), County of Rockland, Consolidated Plaintiffs.
Alan J. Droste, Todd G. Friedland, Pillsbury Winthrop, Costa Mesa, CA, for Gensia Sicor Pharmaceuticals, Inc., Defendant.
James J Duffy, Davis Polk & Wardwell, New York, NY, for Astrazeneca PLC, Consolidated Defendant.
Dennis M. Duggan, Jr., Nixon Peabody, LLP, Boston, MA, for Alpha Therapeutic Corporation, Defendant.
Kimberly A. Dunne, Sidley Austin Brown & Wood, Los Angeles, CA, for Baxter Pharmaceutical Products, Inc., Consolidated Defendant.
Thomas E. Dwyer, Jr., Dwyer & Collora, LLP, Boston, MA, for Bristol-Myers Squibb Company, Oncology Therapeutics Network Corp., Defendants.
Marc H. Edelson, Hoffman & Edelson, Doylestown, PA, for United Food & Commercial Workers Unions and Employers Midwest Health Benefits Fund, Consolidated Plaintiffs.
Mitchell Edwards, Morgan Lewis & Bockius, LLP, Philadelphia, PA, for Pharmacia & Upjohn, Inc., Pharmacia Corp., Defendants.
Steven M. Edwards, Hogan & Hartson, LLP, New York, NY, for Oncology Therapeutics Network Corp., Bristol-Myers Squibb Company, Apothecon, Consolidated Defendants.
Robert G. Eisler, Lieff Cabraser Heimann & Bernstein, LLP, New York, NY, for Citizens for Consumer Justice, Colorado Progressive Coalition, Congress of California Seniors, Florida Alliance for Retired Americans, Health Care For All, Massachusetts Senior Action Council, Masspirg, Minnesota Senior Federation, New Jersey Citizen Action, New York State Wide Senior Action Council, Pennsylvania Alliance For Retired Americans, Vermont Public Interest Research Group, West Virginia *171 Citizen Action, Wisconsin Citizen Action, Plaintiffs.
Bruce E. Falby, Piper Rudnick LLP, Boston, MA, for Sicor, Inc., Defendant.
Douglas Farquhar, Hyman, Phelps & McNamara, P.C., Washington, DC, for Watson Pharmaceuticals, Inc., Defendant.
Eric B. Fastiff, Leiff, Cabraser, Heimann & Bernstein, LLP, San Francisco, CA, for Citizen Action of New York, Connecticut Citizen Action Group, Gray Panthers of Sacramento, Health Action of New Mexico, Maine Consumers for Affordable Health Care, North Carolina Fair Share, Oregon Health Action Campaign, Oregon State Public Interest Research Group, United Senior Action of Indiana, Inc., Betty Sicher, Jack Douglas, Joan S. Lee, John Bennett, Pearl Munic, Sue Miles, Plaintiffs.
Joseph B.G. Fay, Morgan Lewis & Bockius, LLP, Philadelphia, PA, for Pharmacia & Upjohn, Inc., Pharmacia Corp., Defendants.
Anastasia M. Fernands, Goodwin Procter LLP, Boston, MA, for Allergan Worldwide, Bayer, AG, Defendants.
Elizabeth S. Finberg, Sonnenschein, Nath & Rosenthal, LLP, Washington, DC, for Sicor, Inc., Defendant.
Kathryn C. Finnerty, Pittsburgh, PA, Evan Georgopoulos, Gary R. Greenberg, Greenberg Traurig, LLP, Boston, MA, for Mylan Laboratories, Inc., Defendant.
Matthew A. Fischer, Sedgwick, Detert, Moran & Arnold, San Francisco, CA, for Oncology Therapeutics Network Corp., Defendant.
Michael J. Flannery, The David Danis Law Firm, P.C., St. Louis, MO, for Citizens for Consumer Justice, Colorado Progressive Coalition, Congress of California Seniors, Florida Alliance for Retired Americans, Health Care For All, Massachusetts Senior Action Council, Masspirg, Minnesota Senior Federation, New Jersey Citizen Action, New York State Wide Senior Action Council, Pennsylvania Alliance For Retired Americans, Vermont Public Interest Research Group, West Virginia Citizen Action, Wisconsin Citizen Action, All Plaintiffs, Plaintiffs.
Lucy Fowler, Foley Hoag LLP, Boston, MA, for Astrazeneca PLC, All Defendants, Centocor, Inc., Janssen Pharmaceuticals products, L.P., Johnson & Johnson, McNeil-PPC, Inc., Ortho Biotech Products, L.P., Astrazeneca Pharmaceuticals LP, Defendants.
Brian V. Frankel, Department of Justice, California Bureau of Medi-Cal Fraud and Elder Abuse, San Diego, CA, for State of California, Plaintiff.
Jeffrey S. Friedman, Silverman & McDonald, Wilmington, DE, for Leroy Townsend, Consolidated Plaintiff.
Todd S. Garber, Lowey Dannenberg Bemporad & Selinger, P.C., White Plains, NY, for Aetna, Inc., Connecticut General Life Insurance Company, Humana, Inc., Interested Parties.
Scott Garland, United States Department of Justice, Washington, DC, for Astrazeneca US, Defendant.
Martin F. Gaynor, III, Cooley, Manion, Jones LLP, Boston, MA, for ICN Pharmaceuticals, Inc., Defendant.
Peter E. Gelhaar, Donnelly, Conroy & Gelhaar, LLP, Boston, MA, for Baxter International, Inc., Defendant.
David C. Giardina, Sidley Austin Brown & Wood, Chicago, IL, for Allergan Worldwide, Bayer Corp., Defendants.
Alison C. Gilbert, Hogan & Hartson, LLP, New York, NY, for Oncology Therapeutics Network Corp., Defendant.
*172 Arthur F. Golden, Davis Polk & Wardwell, New York, NY, for Astrazeneca US, Defendant.
David F. Graham, Sidley Austin Brown & Wood, Chicago, IL, for Allergan Worldwide, Bayer Corp., Defendants.
Karen F. Green, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, for Novartis Pharmaceuticals, Defendant.
Daniel E. Gustafson, Heins Mills & Olson, P.L.C., Minneapolis, MN, for Action Alliance of Senior Citizens of Greater Philadelphia, United Food & Commercial Workers Unions and Employers Midwest Health Benefits Fund, Consolidated Plaintiffs.
Erik Haas, Patterson, Belknap, Webb & Tyler LLP, New York, NY, for Centocor, Inc., Janssen Pharmaceuticals products, L.P., Johnson & Johnson, McNeil-PPC, Inc., Ortho Biotech Products, L.P., Johnson & Johnson Health Care Systems, Inc., Ortho McNeil Pharmaceuticals, Inc., OrthoNeutrogena, Defendants.
Elizabeth I. Hack, Sonnenschein, Nath & Rosenthal, LLP, Washington, DC, for Sicor, Inc., Defendant.
Blake M. Harper, Hulett Harper, San Diego, CA, for Action Alliance of Senior Citizens of Greater Philadelphia, Twin Cities Baker Workers Health & Welfare Fund, United Food & Commercial Workers Unions and Employers Midwest Health Benefits Fund, Consolidated Plaintiffs.
Kimberley D. Harris, Davis Polk & Wardwell, New York, NY, for Astrazeneca US, Defendant.
Elizabeth Fegan Hartweg, Kenneth A. Wexler & Associates, Chicago, IL, for Action Alliance of Senior Citizens of Greater Philadelphia, Twin Cities Baker Workers Health & Welfare Fund, United Food & Commercial Workers Unions and Employers Midwest Health Benefits Fund, Consolidated Plaintiffs.
Reed Elliott Harvey, Pillsbury Winthrop, Costa Mesa, CA, Kirke M. Hasson, Pillsbury Winthrop LLP, San Francisco, CA, for Gensia Sicor Pharmaceuticals, Inc., Sicor, Inc., Defendants.
Joseph Ernest Haviland, Dwyer & Collora, LLP, Boston, MA, for Bristol-Myers Squibb Company, Bristol-Myers Squibb Company, Consolidated Defendants.
James Vincent Hayes, Williams & Connolly, LLP, Washington, DC, for Abbott Laboratories, Apothecon, Baxter Healthcare Corp., Baxter International, Inc., Berlax Laboratories, Inc., Biogen, Inc., Bristol-Myers Squibb Company, Centocor, Inc., Dey LP, Forest Pharmaceuticals, Inc., Fujisawa Healthcare, Inc., Fujisawa USA, Inc., Gensia Sicor Pharmaceuticals, Inc., Glaxosmithkline, Janssen Pharmaceuticals products, L.P., Johnson & Johnson, Merck & Co., Inc., Novartis Pharmaceuticals, Oncology Therapeutics Network Corp., Ortho Biotech Products, L.P., Purdue Pharma L.P., Reliant Pharmaceauticals, LLC, Sanofi-Synthelabo, Inc., Sicor, Inc., Defendants.
George B. Henderson, United States Attorney's Office, Boston, MA, for All Plaintiffs, Plaintiff.
Colleen M. Hennessey, Peabody & Arnold LLP, Boston, MA, for Hoffmann-La Roche, Inc., Sanofi-Synthelabo, Inc., Defendants.
Mary Ellen Hennessy, Katten Muchin & Zavis, Chicago, IL, for Fujisawa USA, Inc., Fujisawa Healthcare, Inc., Defendants.
Frederick G. Herold, Dechert LLP, Philadelphia, PA, for Howard A. Smithline, Glaxosmithkline, PLC, Defendants.
Nicola R. Heskett, Shook, Hardy & Bacon LLP, Kansas City, MO, for Aventis *173 Pharma, Aventis Pharmacy, Hoechst Marion Roussel, Inc., Hoescht Marion Roussel, Inc., Defendants.
Robert J. Higgins, Dickstein, Shapiro & Morin, Washington, DC, for Baxter International, Inc., Defendant.
Aaron D. Hovan, Kirby McInerney & Squire LLP, New York, NY.

MEMORANDUM AND ORDER
SARIS, District Judge.

I. INTRODUCTION
Defendants have moved to dismiss the Amended Complaint filed by the County of Suffolk in New York in this multi-district litigation involving allegations of fraud against various pharmaceutical companies.[1] Suffolk alleges that Defendant pharmaceutical manufacturers have fraudulently inflated the published average wholesale prices ("AWP's") of their drugs, and that these fraudulent AWP's have caused the State to overpay retail pharmacists for Medicaid drugs. Because New York bills the County for twenty-five percent of the State's Medicaid expenditures, the County claims it has been harmed by the fraudulent drug pricing. Suffolk also alleges that Defendants filed false "Best Prices" reports with the federal government, thereby reducing the rebates paid by the pharmaceutical manufacturers to the State and, consequentially, from the State to Suffolk. Suffolk has asserted federal racketeering claims under 18 U.S.C. § 1962(c), a claim for breach of contract as a third-party beneficiary of the contract between the federal government and each Defendant, an implied cause of action under the federal Best Prices statute, 42 U.S.C. § 1396r-8, as well as six claims under various state law theories.[2]
Pointing out that Suffolk is only one of fifty-eight counties in New York State and that New York State itself has sued several manufacturers, Defendants collectively argue that Suffolk, as an indirect purchaser of the Medicaid drugs, has no standing to sue because its claim is entirely derivative of the State's, that counties are not third-party beneficiaries of the Best Prices *174 contracts, and that the other claims fail substantively and under Federal Rule of Civil Procedure 9(b).
After hearing and review of the briefs, the Court ALLOWS the motion to dismiss Counts I, II, VI, and VIII and DENIES the remainder of the motion, subject to a forthcoming opinion addressing the issues raised in the individual briefs of twenty-two Defendants.

II. BACKGROUND
The Court assumes close familiarity with the discussion of the alleged AWP scheme in its prior opinions, which set forth the factual background of the allegations as well as the appropriate legal standards. See, e.g., In re Pharm. Indus. Average Wholesale Price Litig., 263 F.Supp.2d 172 (D.Mass. May 13, 2003) (Saris, J.) ("Pharm.I"); In re Pharm. Indus. Average Wholesale Price Litig., 309 F.Supp.2d 165 (D.Mass. Jan.9, 2004) (Saris, J.) ("Pharm.II"); In re Pharm. Indus. Average Wholesale Price Litig., 307 F.Supp.2d 190 (D.Mass. Jan.9, 2004) (Saris, J.) ("Pharm.III"); In re Pharm. Indus. Average Wholesale Price Litig., 307 F.Supp.2d 196 (D.Mass. Feb.24, 2004) (Saris, J.) ("Pharm.IV"); In re Pharm. Indus. Average Wholesale Price Litig., 321 F.Supp.2d 187 (D.Mass. June 10, 2004) ("Pharm.V"). The details of this particular dispute involve aspects of New York's Medicaid system.
In New York, the State reimburses providers directly for pharmaceuticals under its Medicaid system, N.Y. Soc. Serv. L. § 367-b (McKinney 2004) (transferring payment responsibility from localities to State), and bills each county for twenty-five percent of the costs associated with the citizens of that county (Am. Compl. at ¶¶ 1, 315 (citing N.Y. Soc. Serv. L. § 368-a (McKinney 2004))).[3] Under the New York Medicaid statute, physician-administered drugs are billed by the physician at "the actual cost of the drugs to practitioners." N.Y. Soc. Serv. L. § 367-a(9)(a). Pharmacist-provided drugs for which no upper limit has been set by the federal Centers for Medicare & Medicaid Services (formerly known as the Health Care Financing Administration) that are either multiple source prescription drugs (i.e., generic drugs) or brand name prescription drugs are reimbursed at the lower of the providers' usual and customary charge to the general public or the Estimated Acquisition Cost ("EAC") of the drug, plus a reasonable dispensing fee. N.Y. Soc. Serv. L. § 367-a(9)(b). Estimated Acquisition Cost is defined as "the average wholesale price of a prescription drug ... as reported by the prescription drug pricing service used by the department, less twelve percent...."[4]Id. Suffolk alleges that New York law defines "average wholesale price" for multi-source drugs or biologicals as "equal to the lessor of the median AWP for all of the generic forms of the drug or biological, or the lowest brand name product AWP." (Am. Compl. at ¶ 95.) As a practical matter, "usual and customary" charge data is impossible to obtain, so *175 reimbursement for drugs usually is based on the EAC of a drug, which in turn is based on the inflated AWP of that drug less the percentage discount. (Am. Compl. at ¶¶ 71-73.)
New York is a participant in the federal "Best Prices" program, under which pharmaceutical manufacturers pay rebates to the states pursuant to rebate agreements between each manufacturer and the Secretary of Health and Human Services. (Am. Compl. at ¶¶ 8, 76-80.) See also 42 U.S.C. § 1396r-8 (establishing Best Prices program); Pharm. V, 321 F.Supp.2d at 195-97 (describing Best Prices program).
Suffolk claims that while the passage of Section 367-b in 1978 centralized administrative control over the claims paying process, counties (called, along with certain cities, "social services districts") still routinely play a role in recovering Medicaid overpayments. (Opp. at 10 n. 9.) Several public welfare statutes explicitly empower counties to file suits for the cost of medical treatment in certain situations. See, e.g., N.Y. Soc. Serv. L. § 104-b (McKinney 2004) (authorizing county to file a lien on personal injury recovery of person receiving public assistance); N.Y. Soc. Serv. L. § 369 (McKinney 2004) (allowing county to file lien on interest in trust to recover cost of medical assistance). Additionally, New York Social Services Law Section 145-b grants counties as well as the State the right to recover treble damages for false statements made to obtain payments from public funds authorized under the chapter of the New York statutes concerning "Assistance and Care." N.Y. Soc. Serv. L. § 145-b (McKinney 2004).

III. DISCUSSION
A. RICO
Suffolk pleads manufacturer-publisher enterprises similar to those dismissed from the Amended Master Consolidated Complaint ("AMCC") action in Pharm. IV, 307 F.Supp.2d at 203-05. In one paragraph, however, Suffolk's pleading differs from the AMCC, in that publishers are alleged to play more of a role in setting AWP's. Rather than simply listing AWP's reported to them by manufacturers, publishers receive "WACs [Wholesale Acquisition Cost Data] that are converted to AWPs." (Am. Compl. at ¶ 81.) This account is consistent with descriptions in recent briefs submitted by the plaintiffs in the AMCC action.
However, Suffolk does not plead this fact in relation to the RICO count (see Am. Compl. ¶¶ 332  55), and specifically pleads, as did the plaintiffs in the AMCC, that "[e]ach defendant has directly controlled the false and inflated AWPs that are reported in the Redbook...." (Am.Compl.¶ 343.) Suffolk also provides no details about the interaction between the publishers and the manufacturers sufficient to meet Federal Rule of Civil Procedure 9(b). Therefore, Suffolk's RICO claim is dismissed without prejudice for the reasons given in Pharm. IV, 307 F.Supp.2d at 203-05.
B. Preemption
The parties refer the Court to the briefing on the issue of preemption as argued in the motions to dismiss the AMCC. The issue was, therefore, resolved by Pharm. V, 307 F.Supp.2d at 198-201, and Suffolk's claims are not preempted by 42 U.S.C. § 1396r-8.
C. Standing
Defendants generally argue that Suffolk, although an injured party, lacks standing to pursue its claims because a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third *176 parties." McInnis-Misenor v. Me. Med. Ctr., 319 F.3d 63, 68 (1st Cir.2003).
"Numerous courts, including the United States Supreme Court... have recognized that the type of secondary standing claimed by [plaintiff] here [(indirect standing)] is disfavored precisely because it can lead to double recovery, as well as because the necessary causal link between the actions of the primary violator and the party claiming injury is too remote." Jackson Nat'l Life Insur. Co. v. Ligator, 949 F.Supp. 200, 204 (S.D.N.Y.1996). Of special concern are the "difficulties inherent in calculation of the damages owed to a remotely injured party." Id. (citing Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 273, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)).
Defendants assert that the standing requirement of direct injury applies to all of Suffolk's claims. The Second Circuit has held that "[t]hese principles [of RICO standing, proximate cause and direct injury requirement] also apply in general terms to the fraud and special duty causes of action asserted by plaintiffs under New York common law." Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 242-43 (2d Cir.1999) (finding that funds providing supplemental medical benefits lacked standing to sue cigarette company under New York common law of fraud and assumption of special duty because funds' injury was derivative of smokers' physical injuries). However, the Second Circuit has also acknowledged that state statutes may reject common law proximate cause requirements and may provide the basis for allowing suit on such derivative claims. See Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc., 344 F.3d 211, 219 (2d Cir.2003) (finding that health care plan had standing to sue generally under New York General Business Law Section 349 despite not being a consumer, but certifying to the Court of Appeals the question of whether it may sue for damages resulting from injuries to consumers caused by smoking).
Suffolk pays money to and receives money from the State, following State requirements which set the applicable reimbursement rate, and it is therefore an indirectly-harmed party. However, the main concerns motivating this standing requirement, the prevention of double-recoveries and the difficulty in allocating damages, are not at issue here, since by statute Suffolk has suffered twenty-five percent of the damages suffered by the State, and damage calculations could be made according to the payment formulae whether or not the State is a party. Additionally, Social Services Law Section 145-b gives both counties and the State a right to sue, indicating that the New York legislature was not overly-concerned with the issue of double-recovery. Defendants have not asserted a challenge to standing under each state cause of action individually, but rather launched a general attack. I will address standing under particular statutes later should the issue be raised.
D. Implied Cause of Action Under the Best Prices Statute
Suffolk argues that it has an implied cause of action under the federal Best Prices Statute, 42 U.S.C. 1396r-8.
The Supreme Court set forth the standards for implying a cause of action recently in Alexander v. Sandoval, 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001):
Like substantive federal law itself, private causes of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private *177 remedy. Statutory intent on this latter point is determinative.
Id. at 286-87, 121 S.Ct. 1511 (citations omitted). See also Rolland v. Romney, 318 F.3d 42, 52 n. 9 (1st Cir.2003) (noting holding of some courts that Sandoval's focus on intent replaces multi-factor test of Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), but not deciding the issue); Bonano v. E. Caribbean Airline Corp., 365 F.3d 81, 84-85, 86 n. 4 (1st Cir.2004) (applying test of whether Congress intended to create both a right and a remedy without mentioning Cort, and noting that "[t]he Supreme Court's decision in Sandoval changed the legal landscape," moving away from Cort's multi-factor test).
The terms of the statute may demonstrate statutory intent. "[F]or a statute to create private rights of action, `its text must be phrased in terms of the class protected.'" Bonano, 365 F.3d at 85 (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002)). Additionally, "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." Sandoval, 532 U.S. at 290, 121 S.Ct. 1511. See also Bonano, 365 F.3d at 85 ("To cinch matters, the scheme of enforcement actually spelled out in the Act counsels persuasively against implying a private right of action.").
While Suffolk arguably falls within a class of entities for whose benefit the Best Prices Statute was enacted, as a governmental entity obliged to pay for prescription drugs, Suffolk does not point to any provisions demonstrating a Congressional intent to create a remedy. Suffolk argues that intent is shown in § 1396r-8(b)(3)(C)(ii), entitled "Penalties ... False information," which states:
Any manufacturer with an agreement under this section that knowingly provides false information is subject to a civil money penalty in an amount not to exceed $100,000 for each item of false information. Such civil money penalties are in addition to other penalties as may be prescribed by law.
42 U.S.C. § 1396r-8(b)(3)(C)(ii) (emphasis added). However, this provision merely shows that Congress intended not to exclude other remedies under federal and state law. See Pharm. V, 321 F.Supp.2d at 199. It does not show an intent to imply remedies for others. Similarly, the fact that Medicare is a cooperative federal-state system that allows for extensive state enforcement, see Pharm. V, 321 F.Supp.2d at 198, does not show an intent to imply a remedy in the Best Prices Statute specifically. Finally, the Best Prices Statute contains an extensive remedial scheme, see Pharm. V, 321 F.Supp.2d at 196, cementing the conclusion that Congress did not intend to create an implied private remedy for a county.
E. Third-Party Beneficiary of the Rebate Agreements
Suffolk brings a claim as a third-party beneficiary of the rebate agreements between the manufacturers and the Secretary of Health and Human Services. The Model Rebate Agreement ("MRA") provides that federal law controls the interpretation of the contract, and "federal common law [generally] governs the contracts of the United States." Roedler v. Dep't of Energy, 255 F.3d 1347, 1351 (Fed.Cir.2001). "This does not mean that state law is an irrelevancy. In general, federal courts developing federal common law are free to borrow from state law, unless there is either a demonstrated need for a uniform national rule or a significant conflict between state law and some discernible federal policy." McCarthy v. Azure, 22 F.3d 351, 356 (1st Cir.1994).
*178 "[T]he crux in third-party beneficiary analysis ... is the intent of the parties." McCarthy, 22 F.3d at 362. The Court "must approach this threshold with care since the law requires `special clarity' to support a finding `that the contracting parties intended to confer a benefit' on a third party." InterGen, 344 F.3d at 146 (quoting McCarthy, 22 F.3d at 362). "The intended party need not be specifically or individually identified in the contract, but must fall within a class clearly intended by the parties to benefit from the contract." Klamath, 204 F.3d at 1211. "One way to ascertain such intent is to ask whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him or her." Id. "When the intent to benefit the third party is not expressly stated in the contract, evidence thereof may be adduced. For determination of contractual and beneficial intent when, as here, the contract implements a statutory enactment, it is appropriate to inquire into the governing statute and its purpose." Roedler, 255 F.3d at 1352.
Suffolk first contends that the issue of the intent of the parties is fact-based and so inappropriate for resolution at the motion to dismiss phase. See, e.g., Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660, 662-63 (2d Cir.1996) (reversing order dismissing third-party beneficiary claim because "[t]he district court ought to have construed the facts and the law in favor of N & S for purposes of the motion to dismiss"); Schuerman v. United States, 30 Fed. Cl. 420, 422 (Fed.Cl.1994) (recharacterizing motion to dismiss as motion for summary judgment).
However, to show the possibility of a fact dispute regarding intent, Suffolk must first show a clear indication on the face of the contract of an intent either to benefit Suffolk or to benefit a class that includes Suffolk. See Klamath, 204 F.3d at 1211. See also id. at 1210 (where the party claiming third party beneficiary status relied on the language of the contract, leaving no facts in dispute, "[t]he plain language of the Contract is sufficient to rebut the contention that the Irrigators are intended third-party beneficiaries"); InterGen, N.V. v. Grina, 344 F.3d 134, 147 (1st Cir.2003) ("The critical fact is that the purchase orders neither mention nor manifest an intent to confer specific legal rights upon InterGen."); Town of Moriah v. Cole-Layer-Trumble Co., 200 A.D.2d 879, 880, 606 N.Y.S.2d 822 (N.Y.App.Div.1994) ("Both the contract itself and the surrounding circumstances indicate that the promisee  the County  intended to give plaintiff and the other towns in the County the benefit of CLT's promised performance...."). Absent such an indication, the claims must be dismissed.[5]
There is no mention of counties anywhere in the MRA. The MRA is to be signed by the federal government and a manufacturer, although it provides substantial benefits to the States and includes duties for the States to perform in order to obtain the benefits. (See, e.g., MRA at II(b) (stating that the manufacturer must "make such rebate payments for each calendar quarter within 30 days after receiving from the State the Medicaid Utilization Information defined in this agreement")). The word "States" is defined as "the 50 states and the District of Columbia" (MRA at I(aa)), and "State Medicaid Agency" means "the agency designated by a State under Section 1902(a)(5) of the Act to administer or supervise the administration of *179 the Medicaid program" (MRA at I(bb)). The agreement also provides that the term "State Medicaid Agency... incorporate[s] any contractors which fulfill responsibilities pursuant to the agreement unless specifically provided ...", but Suffolk has not alleged that it fulfills responsibilities "pursuant to the agreement." While Suffolk reimburses the State for twenty-five percent of the costs, there is no allegation that this requirement is contained in the rebate agreements.
Suffolk maintains that it is still "within a class of parties intended to benefit from the contract," as a government entity that pays for drugs and obtains money from rebates. Suffolk points to the structure of the enabling statute and its legislative history, which shows that Section 1396r-8 is a "cost-saving statute, passed `[i]n response to increasing Medicaid expenditures for prescription drugs ....'" Pharm. V, 321 F.Supp.2d at 195 (quoting Pharm. Research & Mfrs. of Am. v. Walsh, 538 U.S. 644, 649, 123 S.Ct. 1855, 155 L.Ed.2d 889 (2003)). Suffolk also notes that Medicaid depends on cooperative federalism, and the Best Prices Statute does not provide for exclusive federal enforcement.
While Suffolk is in a class of "government agencies paying for drugs under Medicaid," the MRA specifically defines "the 50 states" as the parties to be benefited. (MRA at I(aa).) There is no "clear indication" that counties (as opposed to states) were in the class of intended beneficiaries from the vantage point of either the pharmaceutical manufacturers or the federal government or in the text of the MRA.
F. Section 145-b (Count V)
New York Social Services Law Section 145-b provides:
1.(a) It shall be unlawful for any person, firm or corporation knowingly by means of a false statement or representation, or by deliberate concealment of any material fact, or other fraudulent scheme or device, on behalf of himself or others, to attempt to obtain or to obtain payment from public funds for services or supplies furnished or purportedly furnished pursuant to this chapter.
(b) ... "[S]tatement or representation" includes, but is not limited to: a claim for payment made to the state ...; an acknowledgment, certification, claim, ratification, or report of data which serves as the basis for a claim or a rate of payment....
(c) ... [A] corporation has attempted to obtain or has obtained public funds when ... any public funds are used to reimburse or make prospective payment to an entity from which payment was attempted or obtained....
N.Y. Soc. Serv. L. § 145-b (emphasis added).
The language of this provision encompasses the AWP scheme alleged by Suffolk, that is, that a pharmaceutical company make a fraudulent statement regarding AWP in order to get a higher reimbursement rate for providers who purchase its drugs. The scheme fits into 1(a) and (b), because Defendants attempted to obtain, "on behalf of" providers, payment from public funds through means of reporting of false data (the AWP's) that served as the basis for the claims of the providers. Alternatively, under 1(c), Defendants arguably obtained public funds when public funds were used to reimburse providers, from whom Defendants obtained payment. Defendants rely on New York v. Pharmacia Corp., et. al, Index Nos. 905-04, 905-03, 1150-03, slip op. at 10 (N.Y. Sup.Ct. June 1, 2004), a recent unpublished case from a trial court in New York holding that similar AWP allegations failed to state a claim under Section 145-b because under *180 subsection (a), "there is no allegation that defendants received any public funds as a result of their actions." The court did not address whether a fraudulent statement made "on behalf of others" to assist them in procuring funds was a violation or address arguments under subsection 1(c). Plaintiffs assert a colorable claim under this statute with respect to the alleged AWP fraud. Plaintiffs' Best Prices claim fails, however, because Suffolk has not provided any support for the notion that Section 145-b encompasses statements made to lower payments made to the State, as opposed to statements made to receive payments from the State.
Defendants also argue that this provision, which was enacted in 1975, was preempted when the State took control of the administrative process of paying claims in 1978. Defendants cite to a 1980 letter from the State Comptroller stating that counties need not be concerned with auditing of provider claims, despite existing laws to the contrary, since the State was receiving the vouchers. See N.Y. State Comptroller, Op. No. 80-294 (Sep. 12, 1980). Putting aside the fact that the letter contains a disclaimer that it may not be applicable later in time, the Comptroller's letter says nothing about Section 145-b. Defendants admit that Section 369(1) states that "[a]ll provisions of this chapter not inconsistent with this title shall be applicable to medical assistance for needy persons and the administration thereof by the social services districts," N.Y. Soc. Serv. L. § 369(1), and there is no obvious conflict, given that Section 145-b explicitly gives both the State and the county the right to sue.
Finally, New York courts have held that under the prior system, pursuant to which the county paid providers directly, the language of Section 145-b (in conjunction with other statutes and regulations) allowed the State to bring a claim without joining the county. See, e.g., State v. Estate of Frankel, 65 A.D.2d 788, 410 N.Y.S.2d 321 (N.Y.App.Div.1978) (rejecting argument that county must be joined to bar future claims against the defendants for the same money); State v. Belt Parkway Nursing Home, 95 Misc.2d 264, 407 N.Y.S.2d 800 (N.Y.Sup.1978) (holding that although the City of New York paid the providers, the State may recover). This caselaw supports the notion that the party need not be the payer to have enforcement power where the right to recover is explicitly provided by statute, as in Section 145-b.
G. Common Law Fraud
Defendants move to dismiss the common-law fraud claim on two grounds: (1) Suffolk was or should have been aware of the AWP fraud; and (2) Suffolk cannot bring a claim because it is a third-party to the alleged misrepresentations, which were relied upon by the State of New York when the State set the reimbursement procedures with no input from Suffolk.
While the first argument presents a factual issue inappropriate for resolution at this stage, the second argument is a strong one. In Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Serv. Fund & Annuity Fund v. Lollo, 148 F.3d 194, 196 (2d Cir.1998), the Second Circuit held that "a plaintiff does not establish the reliance element of fraud for purposes of ERISA or New York law by showing only that a third party relied on a defendant's false statement." Id. But see N.B. Garments (Pvt.) Ltd. v. Kids Int'l Corp., No. 03-8041, 2004 WL 444555, **3-4, 2004 U.S. Dist. LEXIS 3774, at *9-12 (S.D.N.Y. March 10, 2004) ("Further, the fact that the First and Second Departments have, subsequent to the Second Circuit's decision in Cement & Concrete *181 Workers, altered their stance, and held in accord with the Eaton line  even citing to the century old Court of Appeals decisions, lends further support for the determination that New York law has, since the 1800's, allowed for fraud claims based on third-party reliance."). The Court dismisses the fraud claims.
H. Unjust Enrichment
In New York, unjust enrichment "applies in situations where no legal contract exists, `but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain, but should deliver to another.'" Indyk v. Habib Bank Ltd., 694 F.2d 54, 57 (2d Cir.1982) (quoting Matarese v. Moore-McCormack Lines, 158 F.2d 631, 634 (2d Cir.1946)).
The essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.... Generally, courts will look to see if a benefit has been conferred on the defendant under mistake of fact or law, if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent.
Paramount Film. Distrib. Corp. v. State, 30 N.Y.2d 415, 421, 334 N.Y.S.2d 388, 285 N.E.2d 695 (1972) (citations omitted). "The enrichment may either be the receipt of money or its equivalent or by being saved from expense or loss." Baratta v. Kozlowski, 94 A.D.2d 454, 464, 464 N.Y.S.2d 803 (N.Y.App.Div.1983).
Defendants do not address Suffolk's Best Prices unjust enrichment claims, but rather argue only that Suffolk cannot recover from the AWP fraud because it was doctors, not manufacturers, who were benefited by over-billing. Leaving aside the thorny issue of whether Suffolk may recover from Defendants to the extent that the AWP fraud boosted their sales, the Court notes that Suffolk's claim that Defendants were "saved from expense" when they fraudulently underpaid Best Prices rebates to the State, and consequentially Suffolk, suffices to state a claim.[6]
I. Consumer Fraud Statute, Section 349
New York General Business Law Section 349 provides:
(a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

. . . . .
(h) In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.
*182 N.Y. Gen. Bus. Law § 349 (McKinney 2004).
"A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." Stutman v. Chemical Bank, 95 N.Y.2d 24, 709 N.Y.S.2d 892, 731 N.E.2d 608, 611 (2000). "[T]he deceptive practice must be `likely to mislead a reasonable consumer acting reasonably under the circumstances.'" Id. at 612 (citation omitted); see also Cruz v. NYNEX Info. Resources, 263 A.D.2d 285, 290-91, 703 N.Y.S.2d 103 (N.Y.App.Div.2000) (holding that alleged unfair practices in distribution of Yellow Pages did not state a claim under Section 349 because only businesses could advertise in the Yellow Pages, not consumers, and so the practice was not "consumer oriented"); Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264-65 (2d Cir.1995) (holding that public interest was harmed where false statements of defendants in regard to safety of lock system caused public safety agency to undertake unnecessary investigations, caused unnecessary cancellations of contracts, and diverted attention of public agency from normal activities). "[R]eliance is not an element of a section 349 claim." Stutman, 709 N.Y.S.2d 892, 731 N.E.2d at 612. "[A] party has standing under Section 349 when its complaint alleges a `consumer injury or harm to the public interest,'" regardless of whether the plaintiff is a consumer. Blue Cross & Blue Shield of N.J., 344 F.3d at 218-19.
Defendants argue first that the reporting of AWP's was not "consumer oriented" within the meaning of Section 349. The Court disagrees. The Defendants made the representations (the AWP's) understanding that consumers would be making payments based on those representations. While government agencies also used the AWP's as the basis for reimbursement, this does not change the fact that the Defendants' conduct affected the public interest through harm to consumers. Additionally, harm to public agencies impacts the public interest. See Securitron, 65 F.3d at 264 (harm to public interest established by "interference with [public safety agency's] decisionmaking process" and distraction of agency by false reports).
Defendants also argue that the false Best Prices reports were not consumer oriented. This is a tougher claim, as there is caselaw to support either side. Compare Securitron, 65 F.3d at 264 (harm to public agencies constitutes harm to public interest) with Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 24-25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (N.Y.1995) ("[P]laintiffs claiming the benefit of Section 349 ... must charge conduct of the defendant that is consumer-oriented."). Having found that the Best Prices claims survive under an unjust enrichment theory, the Court need not decide this question now.
Defendants second argue that there can be no harm because the existence of the AWP spread was common knowledge. This presents a factual issue inappropriate for resolution at this stage.
Defendants third argue that Suffolk cannot recover because Suffolk's injury is derivative of that of the State. The Court may revisit the issue when the Court of Appeals answers the question of indirect standing under General Business Law Section 349 certified to it by the Second Circuit. See Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA, 100 N.Y.2d 636, 769 N.Y.S.2d 196, 801 N.E.2d 417 (2003) (accepting certification). Accordingly, *183 the Court declines to dismiss the claims.
J. Other State Causes of Action
Defendants have moved to dismiss the other state law causes of action. As the briefing has been terse, and resolution will not affect the scope of litigation, the Court declines to address the remaining state law issues at this time.

ORDER
Defendants' motion to dismiss Count I (RICO) is ALLOWED without prejudice to amendment. Defendants' motion to dismiss Count II (implied cause of action under the federal Best Prices Statute), Count VI (breach of Best Prices rebate agreements), and Count VIII (fraud) is ALLOWED. The remainder of the motion is DENIED. The Court will address the individual, company-specific motions to dismiss in separate orders.
NOTES
[1] The named Defendants are: Abbott Laboratories, Inc.; Agouron Pharmaceuticals, Inc.; Amgen, Inc.; AstraZeneca Pharmaceuticals L.P.; AstraZeneca US; Aventis Behring L.L.C.; Aventis Pharmaceuticals Inc.; Barr Laboratories, Inc.; Bayer Corporation; Berlex Laboratories, Inc.; Biogen, Inc.; Bristol-Myers Squibb Company; Chiron Corporation; Eli Lilly and Company; Forest Pharmaceuticals Inc.; Fujisawa Healthcare, Inc.; Genentech, Inc.; Glaxo Wellcome, P.L.C.; GlaxoSmithKline P.L.C.; Immunex Corporation; Ivax Corporation; Ivax Pharmaceuticals Inc.; Janssen Pharmaceutical; Johnson & Johnson; MedImmune, Inc.; Merck & Co., Inc.; Novartis Pharmaceuticals Corporation; Ortho McNeil Pharmaceuticals; Ortho Biotech; Pfizer Inc.; Pharmacia Corporation; Purdue Pharma, L.P.; Reliant Pharmaceuticals; Sanofi-Synthelabo, Inc.; Schering-Plough Corp.; TAP Pharmaceutical Products, Inc.; SmithKline Beecham Corporation; Warrick Pharmaceuticals Corporation; and Wyeth. The Amended Complaint also describes unknown "Doe" Defendants, in categories such as individuals, partnerships, sole proprietors, business entities, companies, corporations, independent pharmacies, dispensers, and other medical providers. Although Suffolk is the only plaintiff in this action, other counties in New York have filed similar suits.
[2] Suffolk brings claims for violations of 18 U.S.C. § 1962(c) (Count I); violation of 42 U.S.C. § 1396r-8 (Count II); violation of New York Social Services Law § 367(A)(7)(d) (Count III); violation of New York Department of Health Regulations, N.Y. Comp.Codes R. & Regs. tit. 18 §§ 512.2(b)(4) and (5) (Count IV); violation of New York Social Services Law § 145-b (Count V); breach of the Best Prices rebate agreements (Count VI); unfair trade practices in violation of New York General Business Law § 349 (Count VII); common law fraud (Count VIII); and unjust enrichment (Count IX).
[3] Prior to the passage of N.Y. Soc. Serv. L. § 367-b in 1978, each local agency made payments for the Medicaid costs of its citizens directly to providers. N.Y. Hosp.  Westchester Div. v. Krauskopf, 98 A.D.2d 667, 668, 469 N.Y.S.2d 408 (N.Y.App.Div.1983). Defendants assert that under the current system, money owed to the State is often set-off against money the State would have paid the county under other programs, rather than paid directly.
[4] For the time period from the start of the conduct leading to the claims until May 15, 2003, the reimbursement formula was AWP  10%. (Opp. at 7 n. 8 (citing N.Y. Soc. Serv. L. § 367-a(9)(b)(ii) as amended by Act of May 15, 2003).)
[5] The Court ordered the rebate agreements produced to Suffolk, which has not disputed that the MRA is the same as the actual agreements in all relevant points.
[6] While Defendants make reference to the issue of whether Suffolk has standing, as mentioned earlier, Defendants fail to argue the issue with any specificity to a particular cause of action.