OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 This case requires us to determine whether a $275 bank fee assessed in connection with the refinancing of a homeowner’s loan constituted a deceptive practice under General Business Law § 349. We hold that it did not, and we therefore affirm the Appellate Division order dismissing plaintiffs’ suit.
 

 In November 1991, plaintiff Michael Stutman and his wife, plaintiff Jeanette Rodriguez, borrowed $175,000 from defendant Chemical Bank (now merged into the Chase Manhattan Bank) to finance the purchase of a cooperative apartment. The loan was secured by plaintiffs’ shares in the co-op. The note covering the loan permitted plaintiffs to prepay the principal at any time without incurring “any prepayment charge.” The note stated:
 

 
 *27
 
 “I have the right to make payments of principal at any time before they are due. * * * I may make a full prepayment or partial prepayments without paying any prepayment charge.”
 

 In February 1994, plaintiffs sought to refinance their loan with a new loan from Citibank, using the same shares of stock as collateral. Chemical, however, would not release the collateral until it received the funds to satisfy the loan, and Citibank would not release the funds for the new loan until it received the collateral.
 

 Chemical informed plaintiffs that it would charge a $275 “attorney’s fee” to arrange a simultaneous transfer in which Chemical would deliver the collateral and other documents to Citibank in exchange for the funds. Plaintiffs initially objected to the fee, but then decided to pay it, under protest, in order to complete the refinancing. About a day after plaintiffs “closed” the loan with Citibank, a representative from Chemical — who plaintiffs allege was not an attorney — delivered the collateral and other unidentified documents to Citibank. Simultaneously, Citibank gave the representative a check which retired the Chemical Bank loan.
 

 Plaintiffs then brought the instant lawsuit, on behalf of themselves and all persons similarly situated, alleging that the $275 charge was a deceptive practice under General Business Law § 349, and that it violated the Federal Truth in Lending Act (TILA) (15 USC § 1601
 
 et seq.).
 
 Plaintiffs also raised several common-law claims, including breach of contract, fraud and excessiveness of the $275 fee. Defendant removed the case to the United States District Court for the Southern District of New York. The District Court granted defendant’s motion to dismiss the TILA claim, holding that the $275 charge was not a finance or prepayment charge under TILA, and that TILA did not create a general prohibition against making misleading statements in connection with loans. The court added that, in any event, the $275 charge was not misleading but was assessed for plaintiff’s “special request” that the loan be refinanced through Citibank. Having dismissed the only Federal claim, and there being no diversity of citizenship, the District Court remanded the State claims to State court
 
 (Stutman v Chemical Bank,
 
 1996 US Dist LEXIS 13970, 1996 WL 539845 [SD NY 1996]).
 

 Defendant then filed a preanswer motion in Supreme Court to dismiss the remaining claims
 
 (see,
 
 CPLR 3211 [a] [5], [7]). The court declined to dismiss plaintiffs’ General Business Law § 349 claim, stating:
 

 
 *28
 
 “It is impossible to conclude, as a matter of law, that it was not materially misleading to contract with plaintiffs in the language of their note — that there would not be ‘any’ prepayment charge— without telling them that there may be an attorney’s fee payable if prepayment were made in the not unusual manner of a refinancing through another bank.”
 

 The court also denied defendant’s motion to dismiss plaintiffs’ claim that the $275 fee was excessive, but granted defendant’s motion to dismiss the remaining claims.
 

 On defendant’s appeal, the Appellate Division reversed and dismissed both of plaintiffs’ surviving claims. Concerning the General Business Law § 349 claim, the Appellate Division stated that the “burden is on plaintiffs to show materially deceptive conduct on which they relied to their detriment” (internal quotations omitted). The court concluded that plaintiffs had failed to meet this burden, because it was “highly improbable that the allegedly misleading language had any effect on plaintiffs’ decision to borrow from defendant in the first place.” In addition, the Appellate Division held that plaintiffs failed to state a claim that the $275 fee was excessive, noting that “ ‘courts are not empowered to set policy on [the excessiveness of] prices.’ ” (260 AD2d 272, 273.)
 

 On appeal to this Court, plaintiffs have abandoned their excessiveness claim and argue only that their General Business Law § 349 claim was improperly dismissed, because the Appellate Division applied the wrong legal standard. We affirm the Appellate Division’s dismissal of plaintiffs’ claim, although for different reasons.
 

 Analysis
 

 Section 349 of the General Business Law, enacted in 1970 as a broad consumer protection measure, begins:
 

 “Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful” (General Business Law § 349 [a]).
 

 A decade later, in 1980, the Legislature added section 349 (h), giving private citizens a right of action for deceptive trade practices. Citizens can enjoin an unlawful business practice, recover actual damages (or $50, whichever is greater) and obtain attorney’s fees. In addition, if a defendant knowingly or
 
 *29
 
 willfully engages in a deceptive practice, the court may, in its discretion, award treble damages up to a maximum of $1,000
 
 (see,
 
 General Business Law § 349 [h]).
 

 A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act
 
 (see, Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank,
 
 85 NY2d 20, 25;
 
 see also, Gaidon v Guardian Life Ins. Co.,
 
 94 NY2d 330, 344;
 
 Small v Lorillard Tobacco Co.,
 
 94 NY2d 43, 55-56). Whether a representation or an omission, the deceptive practice must be “likely to mislead a reasonable consumer acting reasonably under the circumstances”
 
 (Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, supra,
 
 at 26). A deceptive practice, however, need not reach the level of common-law fraud to be actionable under section 349
 
 (see, Gaidon v Guardian Life Ins. Co., supra,
 
 at 343). In addition, a plaintiff must prove “actual” injury to recover under the statute, though not necessarily pecuniary harm
 
 (see, Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, supra,
 
 at 26;
 
 see also,
 
 Givens, Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law § 349, at 565).
 

 Further, as we have repeatedly stated, reliance is not an element of a section 349 claim
 
 (see, Small v Lorillard Tobacco Co., supra,
 
 at 55 [“Intent to defraud and justifiable reliance by the plaintiff are not elements of the statutory claim”];
 
 Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, supra,
 
 at 26 [“the statute does not require proof of justifiable reliance”];
 
 see also,
 
 Givens, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law §§ 349-350, 2000 Cum Pocket Part, at 223 [section 349 contains “no requirement that an injured party show reasonable reliance on erroneous statements * * * in order to obtain relief’]). The plaintiff, however, must show that the defendant’s “material deceptive act” caused the injury
 
 (Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, supra,
 
 at 26).
 

 In the case at hand, plaintiffs allege that defendant violated section 349 by promising, in the note, that there would be no “prepayment charge,” but then assessing a $275 “attorney’s fee” when plaintiffs sought to refinance their loan. Plaintiffs contend that the $275 fee was a “prepayment charge” in disguise and that the note was deceptive for not revealing that fee.
 

 
 *30
 
 The Appellate Division dismissed plaintiffs’ claim, holding that they failed to show justifiable reliance: that is, that the note’s failure to disclose the $275 attorney’s fee “had any effect on plaintiffs’ decision to borrow from defendant in the first place.” That, however, was the wrong standard, because reliance is
 
 not
 
 an element of a section 349 claim.
 
 [1]
 

 Nor did the Appellate Division merely apply the causation standard in the guise of reliance. The Appellate Division’s ruling clearly imposed a reliance requirement: that plaintiffs made the decision to take the loan in reliance on their belief that the $275 fee would not apply. In contrast to section 349 claims, that is precisely the type of reliance that must be shown in order to state a common-law fraud claim
 
 (see,
 
 Restatement [Second] of Torts § 538 [2] [a] [justifiable reliance on a fraudulent misrepresentation is shown if “a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question”]).
 

 Reliance and causation are twin concepts, but they are not identical. In the context of fraud, they are often intertwined
 
 (see,
 
 Restatement [Second] of Torts § 548A [“A fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance”]). But there is a difference between reliance and causation, as illustrated by the facts of this case. Here, plaintiffs allege that because of defendant’s deceptive act, they were forced to pay a $275 fee that they had been led to believe was not required. In other words, plaintiffs allege that defendant’s material deception caused them to suffer a $275 loss. This allegation satisfies the causation requirement. Plaintiffs need not additionally allege that they would not otherwise have entered into the transaction. Nothing more is required.
 
 [2]
 

 
 *31
 
 Nevertheless, we uphold the Appellate Division’s dismissal of plaintiffs’ claim, for a different reason: plaintiffs have failed to show that defendant committed a deceptive act. The nub of plaintiffs’ complaint is that the $275 “attorney’s fee” was really a prepayment charge in disguise. Even taking plaintiffs’ allegations as true, as we must in deciding defendant’s motion to dismiss, plaintiffs have not demonstrated that the fee was a prepayment charge.
 

 It is undisputed that the $275 fee was not a “prepayment charge” in the classic sense: defendant did not impose a penalty on plaintiffs for early repayment of the loan
 
 (see,
 
 Black’s Law Dictionary 1182 [6th ed 1990] [defining prepayment penalty as a “penalty under a note, mortgage, or deed of trust, imposed when the loan is paid before its due date”]; 12 CFR 226.18 [k] [defining prepayment charge under TILA as a “penalty * * * imposed if the obligation is prepaid in full”]). Indeed, plaintiffs acknowledge in their complaint that, had they shown up at Chemical Bank with cash or a certified check for the balance of their loan, they “would not have been charged for the calculation of the pay-off amount or the review of the check or file.”
 

 Rather, the $275 fee was assessed for the special arrangement in which a Chemical representative was required to go to Citibank, attend the closing and tender the collateral in exchange for a check satisfying the balance of the loan. Plaintiffs acknowledge that defendant properly charged a fee for these special services, but argue that an “attorney’s fee” was not justified because the services of an attorney were not required to deliver the collateral to Citibank in exchange for the check. Plaintiffs allege:
 

 “defendant charged the plaintiffs an attorney fee for essentially the services of a delivery person or a title company which agrees to hold documents or a check in escrow pending the termination of the sale” (Amended complaint, If 22).
 

 Thus, at bottom, plaintiffs’ argument is not that the note was deceptive in stating that there would be no prepayment charge. Clearly, no such charge was assessed. Rather, plaintiffs’ argument is that the $275 fee was excessive because it was not
 
 *32
 
 necessary for Chemical to retain an attorney. There might, or might not, be merit to that assertion. But it is in any event unnecessary to consider it because plaintiffs have abandoned their excessiveness claim on appeal to this Court, and argue only that defendant committed a deceptive act under General Business Law § 349. Since no “prepayment charge” was assessed, plaintiffs have failed to show that the note was deceptive.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Judges Bellacosa, Smith, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . Notably, even after
 
 Oswego,
 
 the Appellate Division has occasionally applied an incorrect standard in section 349 cases, imposing a reliance requirement when in fact there is none (see,
 
 e.g., Gershon v Hertz Corp.,
 
 215 AD2d 202, 202-203 [finding no section 349 claim where plaintiffs “allegations do not show materially deceptive conduct on which plaintiff relied to his detriment”]).
 

 [2]
 

 . Similarly, in the securities context, proof of reliance is not required where a duty to disclose material information has been breached, or where there are material omissions or misstatements in a proxy statement. Rather, the materiality of the omission or misstatement satisfies the causation requirement (see,
 
 e.g., Affiliated Ute Citizens v United States,
 
 406 US 128, 154 [breach of duty to disclose: the “obligation to disclose and (the) withhold
 
 *31
 
 ing of a material fact establish the requisite element of causation in fact”];
 
 Mills v Electric Auto-Lite Co.,
 
 396 US 375, 385 [misstatement or material omission in proxy statement: “Where there has been a finding of materiality, a shareholder has made a sufficient showing of causal relationship between the violation and the injury for which he seeks redress”]).