Howard GALE, Plaintiff,

v.

SMITH & NEPHEW, INC., Sound Shore Medical Center of Westchester, Specialty Orthopaedics, PLLC, Steven B. Zelicof, M.D., Vaishafee R. Shukla, M.D., Ognian I. Bouhlev, M.D., Michael S. Ackerman, M.D., Yigal Samocha, M.D., Ira Novich, M.D., Courtney Kuhn, P.A., Craig S. Steinberg, P.A., Michael J. Cicatelli, P.A., J. Delacruz, R.N., K. Miller, R.N., D. Brown, R.N., Vennetta L. Doles, R.N., and C.D., R.N., Defendants.

No. 12 CV 3614 (VB).

United States District Court,
S.D. New York.

Feb. 13, 2013.

Gary Todd. Certain, The Certain Law Firm, PLLC, New York, NY, Victor M. Serby, Woodmere, NY, for Plaintiff.

Glenn Stuart Kerner, Goodwin Procter, LLP, Laura Anne Delvecchio, Heidell, Pittoni, Murphy & Bach, LLP, New York, NY, Christopher A. Terzian, Bartlett, McDonough, Bastone & Monaghan, LLP, John J. Corgan, Schiavetti, Corgan, Soscia, Dieedwards and Nicholson, LLP, Glen Steven Feinberg, Wilson, Elser, Moskowitz, Edelman & Dicker, White Plains, NY, for Defendants.

## MEMORANDUM DECISION

BRICCETTI, District Judge.

In this diversity action, plaintiff Howard Gale brings a variety of common-law tort claims arising from his hip replacement surgery on May 6, 2008. Specifically, plaintiff brings claims for medical malpractice, negligence, and breach of warranty against medical practice Specialty Orthopaedics, PLLC; public hospital Sound Shore Medical Center of Westchester ("SSMC"); physicians Michael S. Ackerman, Ognian I. Bouhlev, Ira Novich, Yigal Samocha, Vaishafee R. Shukla, and Stephen B. Zelicof ("Doctors"); physician's assistants Michael J. Cicatelli, Courtney Kuhn, and Craig S. Steinberg ("PAs"); and registered nurses D. Brown, C.D., J. Delacruz, Vennetta L. Doles, and K. Miller ("Nurses").

Plaintiff also brings claims against Smith & Nephew, Inc. ("S & N"), the designer, manufacturer, and distributor of the Birmingham Hip Resurfacing System ("BHR System"), alleging negligence, products liability, failure to warn, and breach of warranty. Plaintiff's remaining claims are for deceptive trade practices, under New York General Business Law § 349, and for fraud committed against the United States Food and Drug Administration ("FDA").

Defendants S & N and Samocha each move to dismiss plaintiff's first amended complaint for failure to state a claim.[1] (Docs.# 10, 27).

Both motions are GRANTED in part and DENIED in part.

---

1. Samocha has submitted an affidavit in support of his motion to dismiss, but maintains he "does not intend to make this motion one for summary judgment." Because the Court does not consider Samocha's affidavit in deciding his motion to dismiss, the motion is not converted into one for summary judgment. *See* Fed.R.Civ.P. 12(d); *Chambers v. Time Warner*, 282 F.3d 147, 152–53 & n. 3 (2d Cir.2002) (ignoring evidence outside the complaint on a motion to dismiss).

The Court has jurisdiction under 28 U.S.C. § 1332.

## BACKGROUND

For purposes of ruling on these motions to dismiss, the Court accepts as true all well-pleaded allegations in the amended complaint, as summarized below.

On May 6, 2008, plaintiff underwent a right total hip replacement surgery at SSMC. During the operation, the surgical team implanted four BHR System components and parts, for which the FDA had granted premarket approval two years earlier.[2] *See* 21 U.S.C. 360e. Dr. Zelicof, SSMC's Chief of Orthopaedic Surgery and a member of Specialty Orthopaedics, performed the surgery. He was assisted in the surgery, and in the subsequent care of plaintiff, by the Doctors, PAs, and Nurses.

According to the amended complaint, between July 3, 2011, and April 30, 2012, plaintiff suffered five right total hip dislocations. Plaintiff also "went into acute renal failure because of chromium/cobalt poisoning caused by the implanted device." After consulting Dr. Zelicof, plaintiff was told he needed to have the BHR System prostheses removed and replaced.

Plaintiff thereafter filed this action.

## DISCUSSION

### I. *Standard of Review*

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distrib.*

*v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984) (internal quotation marks omitted). In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the amended complaint under the "two-pronged approach" suggested by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. *Id.* at 678, 129 S.Ct. 1937; *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir.2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

To survive a Rule 12(b)(6) motion to dismiss, the allegations in the amended complaint must meet a standard of "plausibility." *Ashcroft v. Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

**2.** The Court takes judicial notice of this fact, based on FDA public records available at http://www.accessdata.fda.gov/cdrh_docs/pdf

4/p040033a. pdf. *See In re Zyprexa Prods. Liab. Litig.*, 549 F.Supp.2d 496, 501 (E.D.N.Y.

## II. *S & N's Motion* [3]

### A. *The Medical Device Amendments of 1976*

After perceiving the common-law tort system had failed to manage risks associated with medical devices, Congress passed the Medical Device Amendments of 1976 ("MDA"), 21 U.S.C. § 360c *et seq.*, to "swe[ep] back some state obligations and impose[ ] a regime of detailed federal oversight." *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 315–16, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008). The MDA included an express pre-emption provision, which states in pertinent part:

> [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
>
> (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
>
> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a).

The MDA also established a three-tier regulatory framework whereby the FDA subjects new devices presenting the greatest risk—Class III devices—to "rigorous" premarket approval before they can be sold. *Riegel v. Medtronic, Inc.*, 552 U.S. at 316–20, 128 S.Ct. 999 (describing MDA regime and noting on average FDA spent 1,200 hours reviewing each premarket approval application).[4] The FDA grants premarket approval only if it is reasonably assured the device is safe and effective, after reviewing, among other things, the product's principles of operation, ingredients, manufacture, and labeling, *id.* at 317–18, 128 S.Ct. 999 (citing 21 U.S.C. § 360e(c)(1)), and weighing "any probable benefit to health from the use of the device against any probable risk of injury or illness from such use," 21 U.S.C. § 360c(a)(2)(C). The FDA "may thus approve devices that present great risks if they nonetheless offer great benefits in light of available alternatives." *Riegel v. Medtronic, Inc.*, 552 U.S. at 318, 128 S.Ct. 999.

A manufacturer's obligation does not end once the FDA grants premarket approval. For example, "the MDA forbids a manufacturer to make, without FDA permission, changes in design specifications, manufacturing processes, labeling, or any other attribute, that would affect safety or effectiveness." *Id.* at 319, 128 S.Ct. 999 (citing 21 U.S.C. § 360e(d)(6)(A)(i)). The manufacturer must also inform the FDA if it learns new information about the device, and must report when the device has caused or contributed to death or serious injury. *Id.* (citing 21 C.F.R. § 803.50(a)). If at any time the FDA determines a device is unsafe or ineffective under the terms of its labeling, it may withdraw premarket approval. *Id.* at 319–20, 128 S.Ct. 999 (citing 21 U.S.C. § 360e(e)(1)).

### B. *Federal Pre–Emption Under the MDA*

The Supreme Court has partly explained the contours of federal pre-emption under

---

2008) (taking judicial notice of FDA documents).

**3.** In resolving S & N's motion to dismiss, the Court does not consider plaintiff's untimely filed memorandum of law in opposition. (*See* Doc. # 15).

**4.** A device can avoid premarket approval if the FDA deems it "substantially equivalent" to a device already on the market. *See* 21 U.S.C. § 360e; *Riegel v. Medtronic, Inc.*, 552 U.S. at 317, 128 S.Ct. 999 (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 493–94, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)).

MDA Section 360k(a). In *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001), the Supreme Court held federal law impliedly pre-empted state-law claims alleging fraud on the FDA, and held plaintiffs had no private right to sue for noncompliance with the MDA. *Id.* at 348, 349 n. 4, 121 S.Ct. 1012. Then, in *Riegel v. Medtronic, Inc.*, the Supreme Court ruled on whether Section 360k(a) expressly pre-empted state tort law. First, the Court held FDA pre-market approval was a federal requirement that triggered the MDA's express pre-emption clause. 552 U.S. at 322–24, 128 S.Ct. 999. Next, the Court held that common-law tort causes of action were pre-empted under Section 360k(a) to the extent they (1) imposed a requirement "different from, or in addition to" the FDA-imposed federal requirements, and (2) related to a device's safety or effectiveness. *See* 552 U.S. at 322–24, 128 S.Ct. 999. The Court noted, however, that Section 360k(a) does not "prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements." *Id.* at 330, 128 S.Ct. 999. But *Riegel* did not elaborate on this "parallel claim" exception, and did not address *Buckman.*

■ Courts have reconciled *Riegel* and *Buckman* to "create a narrow gap through which a plaintiff's state-law claim must fit if it is to escape express or implied pre-emption." *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir.2010). To shoot this gap, the "plaintiff must be suing for conduct that *violates* [federal law, or Section 360k(a) pre-empts the claim,] … but the plaintiff must not be suing *because* the conduct violates" federal law, because he has no private right to bring such a claim.

*Id.*; *Gelber v. Stryker Corp.*, 788 F.Supp.2d 145, 155 (S.D.N.Y.2011). Stated differently, "section 360k protects a medical device manufacturer from liability to the extent that it has complied with federal law, but it does not extend protection from liability where the [state tort] claim is based on a violation of federal law." *Bausch v. Stryker Corp.*, 630 F.3d 546, 552 (7th Cir.2010).

For example, a plaintiff's state tort claim would be pre-empted if it alleged the device, as approved by the FDA, was unreasonably dangerous. *See Riegel v. Medtronic*, 552 U.S. at 322–24, 128 S.Ct. 999. But a plaintiff could bring a state tort claim alleging a manufacturer's device, as produced, was adulterated and therefore did not conform to that device's specific FDA premarket approval requirements. *See Gelber v. Stryker Corp.*, 788 F.Supp.2d at 155–56 (complaint sufficient because it alleged device contained "manufacturing residuals" exceeding limits in premarket approval). In contrast, a plaintiff's state tort claim would be pre-empted if it alleged the device was adulterated, but did not explain how the adulteration contravened federal law specific to the device. *See Ilarraza v. Medtronic, Inc.*, 677 F.Supp.2d 582, 588–89 (E.D.N.Y.2009) (rejecting non-specific allegation that defendant violated broad federal Current Good Manufacturing Practices ("CGMP") applicable to all devices). Further, a plaintiff would not have a private right of action under federal law to bring claim alleging the device did not comply with the MDA. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. at 349 n. 4, 121 S.Ct. 1012. And plaintiff's claim would be impliedly pre-empted by the MDA if it alleged a manufacturer won approval for the device by misleading the FDA. *See id.* at 348, 121 S.Ct. 1012.

■ To satisfy the pleading standards established by *Iqbal* and *Twombly*, plaintiff "cannot simply incant the magic words '[defendants] violated FDA regulations' in order to avoid preemption." *In re Medtronic Inc.*, 592 F.Supp.2d 1147, 1158 (D.Minn.2009). Rather, to state a parallel claim plaintiff must "set forth facts pointing to specific [premarket approval] requirements that have been violated," and link those violations to his injuries. *Wolicki–Gables v. Arrow Int'l, Inc.*, 634 F.3d 1296, 1301 (11th Cir.2011); *see Desabio v. Howmedica Osteonics Corp.*, 817 F.Supp.2d 197, 204 (W.D.N.Y.2011).

### C. *Plaintiff's Claims*

The Court finds premarket approval is a federal requirement imposed on the BHR System, and plaintiff's claims relate to the safety and effectiveness of the BHR System devices. *See Riegel v. Medtronic, Inc.*, 552 U.S. at 321–22, 128 S.Ct. 999. Therefore, plaintiff's claims will not be pre-empted by the MDA if they allege state law causes of action based on violations of federal law. *Id.* at 330, 128 S.Ct. 999. Moreover, if plaintiff's claims are not pre-empted, they must satisfy the pleading standard set forth in *Ashcroft v. Iqbal*, 556 U.S. at 678–79, 129 S.Ct. 1937.[5]

#### 1. *Claims Dismissed*

■ Plaintiff's second claim alleges the BHR System products "contained a design and/or manufacturing defect." Plaintiff does not so much as reference the FDA, federal law, or federal regulation. Further, plaintiff neither provides a factual basis for finding S & N violated federal law, nor alleges facts supporting an inference that he was implanted with products designed or manufactured in contravention of the FDA's premarket approval. *See Gelber v.*

*Stryker Corp.*, 788 F.Supp.2d at 151 (denying dismissal of claim alleging prosthesis contained excess manufacturing residue); *Ilarraza v. Medtronic, Inc.*, 677 F.Supp.2d at 588 (dismissing conclusory claims alleging device's manufacture violated CGMP).

Accordingly, plaintiff's second claim is precluded by Section 360k(a), and, in any event, fails to state a plausible claim. *See Riegel v. Medtronic, Inc.*, 552 U.S. at 322–24, 128 S.Ct. 999; *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 106, 121 (2d Cir.2006), *aff'd*, 552 U.S. 312, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008); *Burgos v. Satiety, Inc.*, 2011 WL 1327684, at *1–2, 2011 U.S. Dist. LEXIS 37138, at *4–5 (E.D.N.Y. Apr. 5, 2011).

■ Plaintiff's third claim alleges S & N breached an implied warranty that the products "were of merchantable quality, safe, and fit for the expected uses," and breached express warranties about the products' "quality, design, safety, and fitness." The Second Circuit has held implied indicate express warranty claims are also pre-empted, *see Becker v. Optical Radiation Corp.*, 66 F.3d 18, 20 (2d Cir.1995) (citing *Martello v. Ciba Vision Corp.*, 42 F.3d 1167, 1168–69 (8th Cir.1994) (finding express warranty claims pre-empted)); *see also Parker v. Stryker Corp.*, 584 F.Supp.2d 1298, 1302–03 & n. 7 (D.Colo. 2008) (noting circuits split on pre-emption of express warranty claims). Even assuming plaintiff's breach of express warranty claim is not pre-empted, his conclusory allegations fail to identify any actionable conduct or include sufficient factual detail to state a claim. *See, e.g., Gelber v. Stryker Corp.*, 788 F.Supp.2d at 165–66; *Gelber v. Stryker Corp.*, 752 F.Supp.2d 328, 335 (S.D.N.Y.2010); *Delaney v. Stryker Ortho-*

---

**5.** Plaintiff's first claim is not against S & N, so the Court does not discuss it in resolving S & N's motion to dismiss.

*paedics*, 2009 WL 564243, at *5–6, 2009 U.S. Dist. LEXIS 16865, at *13–16 (D.N.J. 2009). As a result, plaintiff's third claim is dismissed.

In his sixth claim, plaintiff alleges S & N misrepresented, concealed, or failed to reveal material facts in securing FDA premarket approval, which violated New York's deceptive trade practices statute. *See* N.Y. Gen. Bus. Law § 349. The Supreme Court has made clear that federal law impliedly pre-empts a state-law claim alleging fraud on the FDA. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. at 348, 121 S.Ct. 1012. But the Court declined to decide whether MDA Section 360k(a) expressly pre-empted state deceptive-trade-practice statutes like GBL § 349. *See Riegel v. Medtronic, Inc.*, 552 U.S. at 328–30, 128 S.Ct. 999 (noting confusion whether 21 C.F.R. § 808.1(d)(1) exempts state unfair-trade-practice claims from pre-emption).

■ Assuming plaintiff's sixth claim is not pre-empted, to state a claim under GBL § 349 he must plead "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000). Plaintiff alleges S & N deceived the FDA, but he does not explain how this allegedly improper conduct was "consumer-oriented." *Id.* And plaintiff fails to provide more than a conclusory statement that the allegedly undisclosed facts were material. *Id.* Hence, plaintiff's GBL § 349 claim is dismissed.

■ Finally, plaintiff's seventh claim alleges S & N neglected its post-sale duty to warn about a variety of issues with the BHR System, but it neither specifies the legal basis for any such duty, nor to whom the duty is allegedly owed. Plaintiff's duty-to-warn claim is thus pre-empted because the FDA's premarket approval established the information S & N was obligated to disclose. *See, e.g., Riegel v. Medtronic, Inc.*, 552 U.S. at 322–24, 128 S.Ct. 999; *Horowitz v. Stryker Corp.*, 613 F.Supp.2d 271, 286–87 (E.D.N.Y.2009); *In re Medtronic Inc.*, 592 F.Supp.2d at 1159. Plaintiff's seventh claim is therefore dismissed.

### 2. *Claims Not Dismissed*

■ Plaintiff's fourth claim alleges S & N negligently failed to recall a component used in plaintiff's surgery—product code 74120152, lot number 076850—that was mislabeled with an incorrect size. Plaintiff notes in the amended complaint that around the time of his surgery S & N "recalled approximately 185 [BHR System products] . . . due to a packaging error by one of its subcontractors." S & N concedes such recalls occurred on October 25, 2007, but argues the recall of eleven lots of product code 74120152—but not lot 076850—means the components in lot 076850 were labeled and packaged properly.[6]

It is a close call, but the Court finds plaintiff's pleading sufficient both to avoid preemption and to state a claim. Taken as true, the fourth claim of the amended com-

---

**6.** The Court takes judicial notice that the FDA did not recall BHR System components in lot 076850. See FDA, Medical & Radiation Emitting Device Recalls, http://www.accessdata. fda.gov/scripts/cdrh/cfdocs/cfres/res.cfm? start_search=1&event_id=39402&product descriptiontxt=&centerclassification&1

ftypetext=&recallnumber=& postdatefrom=&postdateto=&productshort reasontxt=&firmlegalnam=&PAGENUM= 25 (last visited Feb. 13, 2013) (listing product codes and lot numbers for recalled BHR System products).

plaint alleges S & N distributed a mislabeled BHR System component, and that that component harmed plaintiff. Although the claim does not refer to a federal law or regulation, the additional fact of S & N's recall, roughly six months before plaintiff's surgery, makes plaintiff's allegation sufficiently specific to put S & N on notice of the nature of the claim (unlike plaintiff's second claim, which generally alleges design and manufacturing defects). *See Bass v. Stryker Corp.*, 669 F.3d 501, 510 (5th Cir.2012); *Bausch v. Stryker Corp.*, 630 F.3d at 558–60; *Rollins v. St. Jude Med.*, 583 F.Supp.2d 790, 801 (W.D.La.2008) (Rep. & Rec., adopted by 2008 U.S. Dist. LEXIS 83610 (Oct. 20, 2008)). The recall also distinguishes plaintiff's fourth claim from a barebones allegation that defendant violated federal law, or recalled products unrelated to his injuries. *See, e.g., Ali v. Allergan USA, Inc.*, 2012 WL 3692396, at *12, 2012 U.S. Dist. LEXIS 121417, at *36 (E.D.Va. Aug. 23, 2012) (dismissing claim for failure to allege recalled product was same model or had same defect that caused plaintiff's injuries); *Desabio v. Howmedica Osteonics Corp.*, 817 F.Supp.2d at 203–05 (contrasting plaintiff's generic claims with *Rollins* ); *Ilarraza v. Medtronic, Inc.*, 677 F.Supp.2d at 588 (noting plaintiff only alleged violations of broad federal CGMP regulations); *Horowitz v. Stryker Corp.*, 613 F.Supp.2d at 282–83 (dismissing claim because plaintiff could not tie injuries to FDA letters two years after surgery indicating some devices had been adulterated); *In re Medtronic Inc.*, 592 F.Supp.2d at 1158–59 (collecting cases with insufficient allegations).

Accordingly, the Court denies S & N's motion to dismiss the fourth claim. Whether S & N accurately labeled the BHR System components implanted into plaintiff, and whether any mislabeling caused plaintiff's injuries, will be resolved on summary judgment or at trial. *See*

*Gross v. Stryker Corp.*, 858 F.Supp.2d 466, 474 (W.D.Pa.2012) (noting recall is not conclusive that manufacturer violated FDA requirements).

■ Plaintiff's fifth claim alleges S & N had a duty to warn doctors that the BHR System could cause renal failure, and S & N was required to monitor patients' blood levels and report the results to the FDA. Plaintiff further alleges S & N was willful, reckless, or grossly negligent in failing to monitor and report these blood levels, which caused plaintiff to suffer renal failure and some permanent loss of kidney function.

In contrast to plaintiff's seventh claim, which is pre-empted because it alleges S & N breached a general duty to warn, *see Riegel v. Medtronic, Inc.*, 552 U.S. at 322–24, 128 S.Ct. 999, part of plaintiff's fifth claim alleges he was injured based on S & N's failure to comply with the premarket approval's monitoring and reporting requirements. This allegation successfully threads the needle between *Riegel* and *Buckman:* it is a state-law tort claim based on an alleged violation of a specific premarket approval requirement, and it links the federal violation to plaintiff's injuries. *See Gelber v. Stryker Corp.*, 788 F.Supp.2d at 155 (citing *Wolicki–Gables v. Arrow Int'l, Inc.*, 634 F.3d at 1301). Therefore, that aspect of plaintiff's fifth cause of action is not pre-empted and is sufficiently specific to state a claim.

### III. Samocha's Motion

Samocha argues the statute of limitations bars plaintiff's claims against him. *See Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir.1989) (permitting defendant to raise affirmative defense of statute of limitations in a pre-answer motion to dismiss under Rule 12(b)(6)). Samocha also contends plaintiff's amended

complaint is insufficiently pleaded, and that plaintiff's second through seventh causes of action do not apply to him.

 Under New York law, "[t]he essential elements of a medical malpractice claim are a departure from good and accepted medical practice and evidence that such departure was a proximate cause of the plaintiff's injury." *Williams v. Sahay*, 12 A.D.3d 366, 368, 783 N.Y.S.2d 664 (2d Dep't 2004). To satisfy the statute of limitations, a medical malpractice action "must be commenced within two years and six months of the act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure." N.Y. C.P.L.R. § 214–a. "In other words, the statute of limitations for medical malpractice is tolled against a single doctor until the last date that doctor treated the plaintiff for the same condition." *Gonzalez v. Wright*, 665 F.Supp.2d 334, 355 (S.D.N.Y. 2009).

 In the amended complaint, plaintiff alleges in his first claim for relief that Samocha assisted Dr. Zelicof in the hip replacement surgery on May 6, 2008, and that Samocha was part of the team that provided plaintiff's follow-up treatment in 2011 and 2012. Plaintiff also alleges the surgery and subsequent treatment he received deviated from the expected standard of care, which deviation caused him numerous injuries.

The amended complaint does not specifically allege Samocha's involvement in plaintiff's post-operation care. Still, it is sufficient to survive a motion to dismiss because "[a] reasonable reading of [it] shows that plaintiff alleges [Samocha is, at least in part,] responsible" for the surgery and aftercare that caused his injuries. *Johnson v. Columbia Univ.*, 2003 WL 22743675, at *16, 2003 U.S. Dist. LEXIS 20932, at *50–52 (S.D.N.Y. Nov. 18, 2003); *see Milano v. Freed*, 767 F.Supp. 450, 456 (E.D.N.Y.1991). If the evidence gathered during discovery shows Samocha was no longer involved in plaintiff's continuing treatment as of November 7, 2009—two years and six months before commencement of this action on May 7, 2012—the Court will resolve the issue on a motion for summary judgment or at trial. *See Schwelnus v. Urological Assoc. of L.I., P.C.*, 94 A.D.3d 971, 972–73, 943 N.Y.S.2d 141 (2d Dep't 2012) (describing plaintiff's obligation at summary judgment to show his claim falls within limitations period).

Finally, plaintiff concedes his "second through seventh claims ... were not directed toward" Samocha. Accordingly, those claims are dismissed as to Samocha.

## CONCLUSION

The motions to dismiss by Smith & Nephew, Inc., and Yigal Samocha are GRANTED in part and DENIED in part.

As to S & N, claims two, three, six, and seven are dismissed without prejudice. *See Reed v. Pfizer, Inc.*, 839 F.Supp.2d 571, 580 (E.D.N.Y.2012); *Gelber v. Stryker Corp.*, 752 F.Supp.2d at 335.

Claim four remains in the case. Claim five also remains in the case, to the extent it is based on injuries suffered from S & N's failure to follow FDA monitoring and reporting requirements imposed by the BHR System's premarket approval. The remainder of claim five is dismissed without prejudice.

If plaintiff wishes to file a second amended complaint, he must obtain consent or move for leave to do so by February 27, 2012. *See* Fed.R.Civ.P. 15(a)(2).

As to Samocha, claims two through seven are dismissed with prejudice, but claim one remains in the case.

The Clerk is instructed to terminate the motions (Docs. # 10, 27).

SO ORDERED.